## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JOEY MEJIA,** on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**STANLEY STEEMER INTERNATIONAL, INC.,**<br><br>Defendant. | Case No. 2:23-cv-4053<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Joey Mejia ("Plaintiff"), individually and on behalf of all similarly situated persons, alleges the following against Stanley Steemer International, Inc., ("Stanley Steemer" or "Defendant") based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by his counsel and review of public documents as to all other matters:

### I.  INTRODUCTION

1.  Plaintiff brings this class action against Stanley Steemer for its failure to properly secure and safeguard Plaintiff's and other similarly situated Stanley Steemer customers' names, Social Security numbers, driver's license numbers and financial account information, including credit and debit card information along with security codes and PIN codes (the "Private Information") from hackers.

1

2.      Stanley Steemer, based in Dublin, Ohio, is a carpet, tile, grout, upholstery, hardwood floor, and air duct cleaning company that serves tens of thousands of customers in 49 states across the U.S.

3.      On or about November 15, 2023, Stanley Steemer filed official notice of a hacking incident with the Maine Attorney General's office.

4.      On or around the same time, Stanley Steemer also sent out data breach notice letters (the "Notice") to individuals whose information was compromised as a result of the hacking incident.

5.      Based on the Notice, Stanley Steemer detected unusual activity on some of its computer systems on March 6, 2023. In response, the company launched an investigation that revealed that an unauthorized party had access to certain company files between February 10, 2023, and March 6, 2023 (the "Data Breach"). Yet, Stanley Steemer waited eight months to notify the public that they were at risk.

6.      As a result of this delayed response, Plaintiff and "Class Members" (defined below) had no idea for *eight months* that their Private Information had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

7.      The Private Information compromised in the Data Breach included highly sensitive data that represents a gold mine for data thieves, including but not limited to, Social Security numbers, driver's license numbers, and financial account information that Stanley Steemer collected and maintained.

8.      Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members'

2

names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

9.      There has been no assurance offered by Stanley Steemer that all personal data or copies of data have been recovered or destroyed, or that Defendant has adequately enhanced its data security practices sufficient to avoid a similar breach of its network in the future.

10.     Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

11.     Plaintiff brings this class action lawsuit to address Stanley Steemer's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and its failure to provide timely and adequate notice to Plaintiff and Class Members of the types of information that were accessed, and that such information was subject to unauthorized access by cybercriminals.

12.     The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to Stanley Steemer, and thus Stanley Steemer was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

13.     Upon information and belief, Stanley Steemer and its employees failed to properly monitor and to properly implement security practices with regard to the computer network and

systems that housed the Private Information. Had Stanley Steemer properly monitored its networks, it would have discovered the Breach sooner.

14.     Plaintiff's and Class Members' identities are now at risk because of Stanley Steemer's negligent conduct as the Private Information that Stanley Steemer collected and maintained is now in the hands of data thieves and other unauthorized third parties.

15.     Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

16.     Accordingly, Plaintiff, on behalf of himself and the Class, asserts claims for Negligence, Negligence Per Se, Breach of Contract, Breach of Implied Contract, violation of the California Consumer Privacy Act, violation of the California Consumer Records Act, violation of the California Unfair Competition Act, violation of the California Consumer Legal Remedies Act, Unjust Enrichment, and Declaratory Judgement.

## II.     PARTIES

17.     Plaintiff Joey Mejia is, and at all times mentioned herein was, an individual citizen of the State of California.

18.     Defendant Stanley Steemer is a Cleaning Company incorporated in Ohio with its principal place of business in Dublin, Ohio.

## III.     JURISDICTION AND VENUE

19.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Stanley Steemer. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20.     This Court has jurisdiction over Stanley Steemer because Stanley Steemer operates in and/or is incorporated in this District.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District and Stanley Steemer has harmed Class Members residing in this District.

## IV.     FACTUAL ALLEGATIONS

### A.  Stanley Steemer's Business and Collection of Plaintiff's and Class Members' Private Information

22.     Stanley Steemer is a carpet, tile, grout, upholstery, hardwood floor, and air duct cleaning company. Founded in 1947, Stanley Steemer is now serves customers across 49 states in the United States. Stanley Steemer employs more than 2,000 people and generates approximately $150 million in annual revenue.

23.     As a condition of receiving cleaning and other services offered by Stanley Steemer, Stanley Steemer requires that its customers entrust it with highly sensitive personal information. In the ordinary course of receiving service from Stanley Steemer, Plaintiff and Class Members were required to provide their Private Information to Defendant.

24.     In its privacy policy, Stanley Steemer provides that: "…we use reasonable efforts to protect your personal information from unauthorized access, use, or disclosure…"[1]

25.     Because of the highly sensitive and personal nature of the information Stanley Steemer acquires and stores with respect to its customers, Stanley Steemer, upon information and belief, promises to, among other things: keep customers' Private Information private; comply with industry standards related to data security and the maintenance of its customers' Private Information; inform its customers of its legal duties relating to data security and comply with all

---

[1] https://www.stanleysteemer.com/privacy-policy (last visited on December 7, 2023).

5

federal and state laws protecting customers' Private Information; only use and release customers' Private Information for reasons that relate to the services it provides; and provide adequate notice to customers if their Private Information is disclosed without authorization.

26.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Stanley Steemer assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

27.     Plaintiff and Class Members relied on Stanley Steemer to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this information, which Defendant ultimately failed to do.

**B.  <u>The Data Breach and Stanley Steemer's Inadequate Notice to Plaintiff and Class Members</u>**

28.     According to Defendant's Notice, it learned of unauthorized access to its computer systems on March 6, 2023, with such unauthorized access having taken place between February 10, 2023, and March 6, 2023.

29.     Through the Data Breach, the unauthorized cybercriminal(s) accessed a cache of highly sensitive Private Information, including Social Security numbers, driver's license numbers, and financial account information.

30.     On or about November 15, 2023, roughly eight months after Stanley Steemer learned that the Class's Private Information was first accessed by cybercriminals, Stanley Steemer finally began to notify customers that its investigation determined that their Private Information was accessed.

31.     Stanley Steemer delivered Data Breach Notification Letters to Plaintiff and Class Members, alerting them that their highly sensitive Private Information had been exposed in a "incident."

32.     Stanley Steemer had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

33.     Plaintiff and Class Members provided their Private Information to Stanley Steemer with the reasonable expectation and mutual understanding that Stanley Steemer would comply with its obligations to keep such information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

34.     Stanley Steemer's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

35.     Stanley Steemer knew or should have known that its electronic records would be targeted by cybercriminals.

**C.  Stanley Steemer Failed to Comply with FTC Guidelines**

36.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

7

37.     In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

38.     The FTC further recommends that companies not maintain personally identifiable information ("PII") longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

39.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

40.     As evidenced by the Data Breach, Stanley Steemer failed to properly implement basic data security practices. Stanley Steemer's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

8

41.     Stanley Steemer was at all times fully aware of its obligation to protect the Private Information of its customers yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**D.  Stanley Steemer Failed to Comply with Industry Standards**

42.     As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

43.     Some industry best practices that should be implemented by businesses like Stanley Steemer include but are not limited to educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

44.     Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

45.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for

Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

46.    Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**E.  Stanley Steemer Breached its Duty to Safeguard Plaintiff's and Class Members' Private Information**

47.    In addition to its obligations under federal and state laws, Stanley Steemer owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Stanley Steemer owed a duty to Plaintiff and Class Members to provide reasonable security, including complying with industry standards and requirements, training for its staff, and ensuring that its computer systems, networks, and protocols adequately protected the Private Information of Class Members

48.    Stanley Steemer breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Stanley Steemer's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.    Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b.    Failing to adequately protect customers' Private Information;

c.    Failing to properly monitor its own data security systems for existing intrusions;

d.    Failing to sufficiently train its employees regarding the proper handling of its customers Private Information;

e. Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

f. Failing to adhere to industry standards for cybersecurity as discussed above; and

g. Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

49. Stanley Steemer negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

50. Had Stanley Steemer remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

51. Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiff and Class Members also lost the benefit of the bargain they made with Stanley Steemer.

**F. Stanley Steemer Should Have Known that Cybercriminals Target Private Information to Carry Out Fraud and Identity Theft**

52. The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[2] Exposure of highly sensitive personal

---

[2] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on December 7, 2023).

information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

53.     Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

54.     Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

55.     In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email

---

addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

56. Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

57. For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[3] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

58. Identity thieves can also use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

---

[3] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited December 7, 2023).

59.     PII is data that can be used to detect a specific individual. PII is a valuable property right. Its value is axiomatic, considering the value of big data in corporate America and the consequences of cyber thefts (which include heavy prison sentences). Even this obvious risk-to-reward analysis illustrates beyond doubt that PII has considerable market value.

60.     The U.S. Attorney General stated in 2020 that consumers' sensitive personal information commonly stolen in data breaches "has economic value."[4] The increase in cyberattacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendant's industry.

61.     The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[5] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web and that the "*fullz*" (a term criminals who steal credit card information use to refer to a complete set of information on a fraud victim) sold for $30 in 2017.[6]

62.     Furthermore, even information such as names, email addresses and phone numbers, can have value to a hacker. Beyond things like spamming customers, or launching phishing attacks using their names and emails, hackers, *inter alia*, can combine this information with other hacked

---

[4] *See Attorney General William P. Barr Announces Indictment of Four Members of China's Military for Hacking into Equifax*, U.S. Dep't of Justice, Feb. 10, 2020, available at https://www.justice.gov/opa/speech/attorney-general-william-p-barr-announces-indictment-fourmembers-china-s-military (last visited on December 7, 2023).

[5] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited on December 7, 2023).

[6] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited on December 7, 2023).

data to build a more complete picture of an individual. It is often this type of piecing together of a puzzle that allows hackers to successfully carry out phishing attacks or social engineering attacks. This is reflected in recent reports, which warn that "[e]mail addresses are extremely valuable to threat actors who use them as part of their threat campaigns to compromise accounts and send phishing emails."[7]

63.     The Dark Web Price Index of 2022, published by PrivacyAffairs[8] shows how valuable just email addresses alone can be, even when not associated with a financial account:

| Email Database Dumps | Avg. Price USD (2022) |
| --- | --- |
| 10,000,000 USA email addresses | $120 |
| 600,000 New Zealand email addresses | $110 |
| 2,400,000 million Canada email addresses | $100 |

64.     Beyond using email addresses for hacking, the sale of a batch of illegally obtained email addresses can lead to increased spam emails. If an email address is swamped with spam, that address may become cumbersome or impossible to use, making it less valuable to its owner.

65.     Likewise, the value of PII is increasingly evident in our digital economy. Many companies including Stanley Steemer collect PII for purposes of data analytics and marketing. These companies, collect it to better target customers, and shares it with third parties for similar purposes.[9]

---

[7] *See* https://www.magicspam.com/blog/dark-web-price-index-the-cost-of-email-data/ (last visited on December 7, 2023).

[8] *See* https://www.privacyaffairs.com/dark-web-price-index-2022/ (last visited on December 7, 2023).

[9] *See* https://robinhood.com/us/en/support/articles/privacy-policy/ (last visited on December 7, 2023).

66.     One author has noted: "Due, in part, to the use of PII in marketing decisions, commentators are conceptualizing PII as a commodity. Individual data points have concrete value, which can be traded on what is becoming a burgeoning market for PII."[10]

67.     Consumers also recognize the value of their personal information and offer it in exchange for goods and services. The value of PII can be derived not only by a price at which consumers or hackers actually seek to sell it, but rather by the economic benefit consumers derive from being able to use it and control the use of it.

68.     A consumer's ability to use their PII is encumbered when their identity or credit profile is infected by misuse or fraud. For example, a consumer with false or conflicting information on their credit report may be denied credit. Also, a consumer may be unable to open an electronic account where their email address is already associated with another user.  In this sense, among others, the theft of PII in the Data Breach led to a diminution in value of the PII.

69.     Data breaches, like that at issue here, damage consumers by interfering with their fiscal autonomy. Any past and potential future misuse of Plaintiff's PII impairs his ability to participate in the economic marketplace.

---

[10] *See* John T. Soma, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ('PII') Equals the "Value" of Financial Assets,* 15 Rich. J. L. & Tech. 11, 14 (2009).

70.     A study by the Identity Theft Resource Center[11] shows the multitude of harms caused by fraudulent use of PII:



71.     It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or personal financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[12]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

---

[11] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited December 7, 2023).

[12] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html (last visited December 7, 2023).

72.     PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

73.     As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

**G.  Plaintiff's and Class Members' Damages**

*Plaintiff Mejia's Experience*

74.     When Plaintiff Mejia first became a Stanley Steemer customer, Stanley Steemer required Plaintiff Mejia provide it with substantial amounts of his PII.

75.     On or about November 15, 2023, Plaintiff Mejia received a letter entitled "Notice of Data Breach" which told him that his Private Information had been accessed during the Data Breach. The notice letter informed him that the Private Information compromised included his Social Security number, driver's license number, and financial account information.

76.     The notice letter offered Plaintiff Mejia only two years of credit monitoring services. Two years of credit monitoring is not sufficient given that Plaintiff Mejia will now experience a lifetime of increased risk of identity theft and other forms of targeted fraudulent misuse of his Private Information.

77.     Plaintiff Mejia suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring his accounts for fraud.

78.     Plaintiff Mejia would not have provided his Private Information to Defendant had Defendant timely disclosed that its systems lacked adequate computer and data security practices to safeguard its customers' personal information from theft, and that those systems were subject to a data breach.

79.     Plaintiff Mejia suffered actual injury in the form of having his Private Information compromised and/or stolen as a result of the Data Breach.

80.     Plaintiff Mejia suffered actual injury in the form of damages to and diminution in the value of his personal and financial information – a form of intangible property that Plaintiff Mejia entrusted to Defendant for the purpose of receiving cleaning services from Defendant and which was compromised in, and as a result of, the Data Breach.

81.     Plaintiff Mejia suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by his Private Information being placed in the hands of criminals.

82.     Plaintiff Mejia has a continuing interest in ensuring that his Private Information, which remains in the possession of Defendant, is protected and safeguarded from future breaches.

83.     As a result of the Data Breach, Plaintiff Mejia made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching the credit monitoring offered by Defendant, as well as long-term credit monitoring options he will now need to purchase out of pocket and then use. Plaintiff Mejia has spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities.

84.     As a result of the Data Breach, Plaintiff Mejia has suffered anxiety as a result of the release of his Private Information to cybercriminals, which Private Information he believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using his Private Information for purposes of committing cyber and other crimes against him. Plaintiff Mejia is very concerned about this

increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach will have on his life.

85.    Plaintiff Mejia also suffered actual injury as a result of the Data Breach in the form of (a) damage to and diminution in the value of his Private Information, a form of property that Defendant obtained from Plaintiff Mejia; (b) violation of his privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud he now faces.

86.    As a result of the Data Breach, Plaintiff Mejia anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

87.    In sum, Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

88.    Plaintiff and Class Members entrusted their Private Information to Defendant in order to receive Defendant's services.

89.    Plaintiff's Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant's inadequate data security practices.

90.    As a direct and proximate result of Stanley Steemer's actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

91. Further, as a direct and proximate result of Stanley Steemer's conduct, Plaintiff and Class Members have been forced to spend time dealing with the effects of the Data Breach.

92. Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiff and Class Members.

93. The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

94. Plaintiff and Class Members also lost the benefit of the bargain they made with Stanley Steemer. Plaintiff and Class Members overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price Plaintiff and Class Members paid to Stanley Steemer was intended to be used by Stanley Steemer to fund adequate security of Stanley Steemer's system and protect Plaintiff's and Class Members' Private Information. Thus, Plaintiff and the Class did not receive what they paid for.

95. Additionally, as a direct and proximate result of Stanley Steemer's conduct, Plaintiff and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

96.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

97.     Additionally, Plaintiff and Class Members also suffered a loss of value of their PII and PHI when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[13] In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[14]

98. As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiff and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiff and the Class Members, thereby causing additional loss of value.

99.     Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. The contractual bargain entered into between Plaintiff and Heartland included

---

[13] *See* https://thequantumrecord.com/blog/data-brokers-profit-from-our-data/#:~:text=The%20business%20of%20data%20brokering,annual%20revenue%20of%20%24200%20billion. (last visited on August 9, 2023).

[14] *Frequently Asked Questions,* Nielsen Computer & Mobile Panel, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited Jan. 16, 2023).

Defendant's contractual obligation to provide adequate data security, which Defendant failed to provide. Thus, Plaintiff and Class Members did not get what they bargained for.

100. Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

    a.  Monitoring for and discovering fraudulent charges;

    b.  Canceling and reissuing credit and debit cards;

    c.  Addressing their inability to withdraw funds linked to compromised accounts;

    d.  Taking trips to banks and waiting in line to obtain funds held in limited accounts;

    e.  Spending time on the phone with or at a financial institution to dispute fraudulent charges;

    f.  Contacting financial institutions and closing or modifying financial accounts;

    g.  Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

    h.  Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

    i.  Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

101. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Stanley Steemer, is protected from future additional breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing personal and financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

102. As a direct and proximate result of Stanley Steemer's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## V.   CLASS ACTION ALLEGATIONS

103. Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

104. Specifically, Plaintiff proposes the following Nationwide Class, as well as the following California Subclass definitions (collectively referred to herein as the "Class"), subject to amendment as appropriate:

**Nationwide Class**

All individuals in the United States who had Private Information accessed and/or acquired as a result of the Data Breach, including all who were sent a notice of the Data Breach.

**California Subclass**

All residents of California who had Private Information accessed and/or acquired as a result of the Data Breach, including all who were sent a notice of the Data Breach.

105. Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal

representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

106. Plaintiff reserves the right to modify or amend the definitions of the proposed Nationwide Class, as well as the California Subclass, before the Court determines whether certification is appropriate.

107. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

108. <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of 66,978 customers of Stanley Steemer whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Stanley Steemer's records, Class Members' records, publication notice, self-identification, and other means.

109. <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a. Whether Stanley Steemer engaged in the conduct alleged herein;

    b. Whether Stanley Steemer's conduct violated the California Consumer Privacy Act and the California Consumer Records Act invoked below;

    c. When Stanley Steemer learned of the Data Breach;

    d. Whether Stanley Steemer's response to the Data Breach was adequate;

    e. Whether Stanley Steemer unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

f. Whether Stanley Steemer failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

g. Whether Stanley Steemer's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h. Whether Stanley Steemer's data security systems prior to and during the Data Breach were consistent with industry standards;

i. Whether Stanley Steemer owed a duty to Class Members to safeguard their Private Information;

j. Whether Stanley Steemer breached its duty to Class Members to safeguard their Private Information;

k. Whether hackers obtained Class Members' Private Information via the Data Breach;

l. Whether Stanley Steemer had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

m. Whether Stanley Steemer breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

n. Whether Stanley Steemer knew or should have known that its data security systems and monitoring processes were deficient;

o. What damages Plaintiff and Class Members suffered as a result of Stanley Steemer's misconduct;

p. Whether Stanley Steemer's conduct was negligent;

q. Whether Stanley Steemer's conduct was *per se* negligent;

    r.   Whether Stanley Steemer was unjustly enriched;

    s.   Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

    t.   Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

    u.   Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

110.   <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach.

111.   <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

112.   <u>Predominance</u>. Stanley Steemer has engaged in a common course of conduct toward Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Stanley Steemer's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

113.   <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is

superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Stanley Steemer. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

114. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Stanley Steemer has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

115. Finally, all members of the proposed Class are readily ascertainable. Stanley Steemer has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Stanley Steemer.

## VI.  CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the California Subclass)**

116. Plaintiff restates and realleges all of the allegations stated above and hereafter as if fully set forth herein.

117. Stanley Steemer knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in

safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

118.     Stanley Steemer's duty also included a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

119.     Stanley Steemer knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Stanley Steemer was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

120.     Stanley Steemer owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. Stanley Steemer's duties included, but were not limited to, the following:

a.   To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b.   To protect customers' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c.   To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d.   To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to the FTCA, the California Consumer Privacy Act, the California Consumer Records Act, the California Unfair Competition Act, and the California Consumer Legal Remedies Act;

    e.   To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

    f.   To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

121.    Stanley Steemer's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

122.    Stanley Steemer's duty also arose because Defendant was bound by industry standards to protect its customers' confidential Private Information.

123.    Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Stanley Steemer owed them a duty of care to not subject them to an unreasonable risk of harm.

124.    Stanley Steemer, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Stanley Steemer's possession.

125.    Stanley Steemer, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

126.    Stanley Steemer, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

127. Stanley Steemer breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b. Failing to adequately monitor the security of its networks and systems;

    c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

    d. Allowing unauthorized access to Class Members' Private Information;

    e. Failing to comply with the FTCA;

    f. Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

    g. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

128. Stanley Steemer acted with reckless disregard for the rights of Plaintiff and Class Members by failing to provide prompt and adequate individual notice of the Data Breach such that Plaintiff and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

129. Stanley Steemer had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Stanley Steemer with their Private Information was predicated on the understanding that Stanley Steemer would take adequate security precautions. Moreover, only Stanley Steemer had the ability to protect its systems (and the Private Information that it stored on them) from attack.

130.    Stanley Steemer's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised and exfiltrated as alleged herein.

131.    As a result of Stanley Steemer's ongoing failure to notify Plaintiff and Class Members regarding exactly what Private Information has been compromised, Plaintiff and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

132.    Stanley Steemer's breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

133.    As a result of Stanley Steemer's negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

134.    Stanley Steemer also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach.

135.    As a direct and proximate result of Stanley Steemer's negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

136.    The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

137.    Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

138.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Stanley Steemer to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## COUNT II
## NEGLIGENCE *PER SE*
**(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the California Subclass)**

139.    Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

140.    Pursuant to Section 5 of the FTCA, Stanley Steemer had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and Class Members.

141.    Stanley Steemer breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

142.    Plaintiff and Class Members are within the class of persons that the FTCA is intended to protect.

143.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of Stanley Steemer's duty in this regard.

144. Stanley Steemer violated the FTCA by failing to use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

145. It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiff's and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Stanley Steemer's networks, databases, and computers that stored Plaintiff's and Class Members' unencrypted Private Information.

146. Stanley Steemer's violations of the FTCA constitute negligence *per se*.

147. Plaintiff's and Class Members' Private Information constitutes personal property that was stolen due to Stanley Steemer's negligence, resulting in harm, injury, and damages to Plaintiff and Class Members.

148. As a direct and proximate result of Stanley Steemer's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to damages from the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

149. Stanley Steemer breached its duties to Plaintiff and the Class under the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

150. As a direct and proximate result of Stanley Steemer's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

151. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Stanley Steemer to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## COUNT III
## BREACH OF CONTRACT
**(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the California Subclass)**

152. Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

153. Plaintiff and Class Members entered into a valid and enforceable contract through which they paid money to Stanley Steemer in exchange for services. That contract included promises by Defendant to secure, safeguard, and not disclose Plaintiff's and Class Members' Private Information.

154. Stanley Steemer's Privacy Policy memorialized the rights and obligations of Stanley Steemer and its customers. This document was provided to Plaintiff and Class Members in a manner in which it became part of the agreement for services.

155. In the Privacy Policy, Stanley Steemer commits to protecting the privacy and security of private information and promises to never share Plaintiff's and Class Members' Private Information except under certain limited circumstances.

156. Plaintiff and Class Members fully performed their obligations under their contracts with Stanley Steemer.

157. However, Stanley Steemer did not secure, safeguard, and/or keep private Plaintiff's and Class Members' Private Information, and therefore Stanley Steemer breached its contracts with Plaintiff and Class Members.

158.     Stanley Steemer allowed third parties to access, copy, and/or exfiltrate Plaintiff's and Class Members' Private Information without permission. Therefore, Stanley Steemer breached the Privacy Policy with Plaintiff and Class Members.

159.     Stanley Steemer's failure to satisfy its confidentiality and privacy obligations resulted in Stanley Steemer providing services to Plaintiff and Class Members that were of a diminished value.

160.     As a result, Plaintiff and Class Members have been harmed, damaged, and/or injured as described herein, including in Defendant's failure to fully perform its part of the bargain with Plaintiff and Class Members.

161.     As a direct and proximate result of Stanley Steemer's conduct, Plaintiff and Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

162.     In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Stanley Steemer to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

### COUNT IV
### BREACH OF IMPLIED CONTRACT
**(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the California Subclass)**

163.     Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

164.     This Count is pleaded in the alternative to Count III above.

165.     Stanley Steemer provides cleaning services to Plaintiff and Class Members. Plaintiff and Class Members formed an implied contract with Defendant regarding the provision of those services through their collective conduct, including by Plaintiff and Class Members paying for services from Defendant.

36

166. Through Defendant's sale of products and services, it knew or should have known that it must protect Plaintiff's and Class Members' confidential Private Information in accordance with Stanley Steemer's policies, practices, and applicable law.

167. As consideration, Plaintiff and Class Members paid money to Stanley Steemer and turned over valuable Private Information to Stanley Steemer. Accordingly, Plaintiff and Class Members bargained with Stanley Steemer to securely maintain and store their Private Information.

168. Stanley Steemer accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

169. In delivering their Private Information to Stanley Steemer and paying for services, Plaintiff and Class Members intended and understood that Stanley Steemer would adequately safeguard the Private Information as part of that service.

170. Defendant's implied promises to Plaintiff and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; and (7) taking other steps to protect against foreseeable data breaches.

171. Plaintiff and Class Members would not have entrusted their Private Information to Stanley Steemer in the absence of such an implied contract.

172. Had Stanley Steemer disclosed to Plaintiff and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and Class Members would not have provided their Private Information to Stanley Steemer.

173. Stanley Steemer recognized that Plaintiff's and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and the other Class Members.

174. Stanley Steemer violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' Private Information.

175. Plaintiff and Class Members have been damaged by Stanley Steemer's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**COUNT V**
**Violation of the California Consumer Privacy Act**
**Cal. Civ. Code §§ 1798.100, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

176. Plaintiff realleges and restates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

177. Plaintiff Joey Mejia (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and the California Subclass.

178. Plaintiff and California Subclass Members are residents of California.

179. Stanley Steemer is a corporation organized or operated for the profit or financial benefit of its owners. Stanley Steemer collects consumers' personal information (for the purposes of this section, "Private Information") as defined in the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.140.

180.     Stanley Steemer violated § 1798.150 of the CCPA by failing to prevent Plaintiff's and California Subclass Members' nonencrypted Private Information from unauthorized access and exfiltration, theft, or disclosure as a result of Stanley Steemer's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

181.     Stanley Steemer has a duty to implement and maintain reasonable security procedures and practices to protect Plaintiff's and California Subclass Members' Private Information. As detailed herein, Stanley Steemer failed to do so.

182.     As a direct and proximate result of Stanley Steemer's acts, Plaintiff's and California Subclass Members' Private Information, including names, contact information, dates of birth, health insurance information, and other sensitive medical records, was subjected to unauthorized access and exfiltration, theft, or disclosure.

183.     Plaintiff and California Subclass Members seek injunctive or other equitable relief to ensure Stanley Steemer hereinafter properly safeguards customer Private Information by implementing reasonable security procedures and practices. Such relief is particularly important because Stanley Steemer continues to hold customer Private Information, including Plaintiff's and California Subclass Members' Private Information. Plaintiff and California Subclass Members have an interest in ensuring that their Private Information is reasonably protected.

184.     A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Stanley Steemer and third parties with similar inadequate security measures.

185. Plaintiff and the California Subclass seek actual damages, as well as all monetary and non-monetary relief allowed by law, including actual financial losses; injunctive relief; and reasonable attorneys' fees and costs.

186. On December 5, 2023, Plaintiff provided Stanley Steemer with written notice of its violations of the CCPA, pursuant to Cal. Civil Code § 1798.150(b)(1), asserting violations of Cal. Civil Code §§ 1798.81.5 and 1798.150.

187. If Stanley Steemer has not cured or is unable to cure the violations described therein within thirty days of receipt, Plaintiff will amend his complaint to seek all relief available under the CCPA, including damages to be measured as the greater of actual damages or statutory damages in an amount up to $750.00 per consumer per incident. See Cal. Civ. Code § 1798.150(a)(1)(A) & (b).

188. As a result of Stanley Steemer's failure to implement and maintain reasonable data security procedures and practices that resulted in the Data Breach, Plaintiff and the California Subclass seek injunctive relief, including public injunctive relief and declaratory relief.

## COUNT VI
### Violation of the California Consumer Records Act
### Cal. Civ. Code §§ 1798.80, *et seq.*
### (On Behalf of Plaintiff and the California Subclass)

189. Plaintiff realleges and restates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

190. "[T]o ensure that personal information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information,

to protect the personal information [Private Information] from unauthorized access, destruction, use, modification, or disclosure."

191.    Stanley Steemer is a business that owns, maintains, and licenses personal information (or "Private Information"), within the meaning of Cal. Civ. Code §§ 1798.80(a) and 1798.81.5(b), about Plaintiff and California Subclass Members.

192.    Businesses that own or license computerized data that includes Private Information are required to notify California residents when their Private Information has been acquired (or is reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of personal information [Private Information] that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

193.    Stanley Steemer is a business that owns or licenses computerized data that includes "personal information" [Private Information] as defined by Cal. Civ. Code § 1798.80.

194.    Plaintiff's and California Subclass Members' Private Information includes "personal information" as covered by Cal. Civ. Code § 1798.82.

195.    Because Stanley Steemer reasonably believed that Plaintiff's and California Subclass Members' Private Information was acquired by unauthorized persons during the Data Breach, Stanley Steemer had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

196.    Stanley Steemer failed to fully disclose material information about the Data Breach, including the types of Private Information impacted.

197. By failing to disclose the Data Breach in a timely and accurate manner, Stanley Steemer violated Cal. Civ. Code § 1798.82.

198. Stanley Steemer also violated Cal. Civ. Code § 1798.82 by not publishing a notice of data breach in the format required by Cal. Civ. Code § 1798.82(d)(1).

199. As a direct and proximate result of Stanley Steemer's violations of the Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiff and California Subclass Members suffered damages, as described above.

200. Plaintiff and California Subclass Members seek relief under Cal. Civ. Code § 1798.84, including actual damages and injunctive relief.

**COUNT VII**
**Violation of the California Unfair Competition Act**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

201. Plaintiff realleges and restates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

202. Stanley Steemer is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

203. Stanley Steemer violated Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

204. Stanley Steemer's "unfair" acts and practices include:

a. Failing to implement and maintain reasonable security measures to protect Plaintiff's and California Subclass Members' Private Information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach; and

b. Failing to identify foreseeable security risks, remediate identified security risks, and sufficiently improve security following previous cybersecurity incidents, as described herein.

205. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and California Subclass Members, whose Private Information has been compromised.

206. Stanley Steemer's failure to implement and maintain reasonable security measures also was contrary to legislatively declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code § 1798.81.5, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.100;

207. Stanley Steemer's failure to implement and maintain reasonable security measures also resulted in substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not have known of Stanley Steemer's grossly inadequate security, consumers could not have reasonably avoided the harms that Stanley Steemer caused.

208. Stanley Steemer has also engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), the FTC Act, 15 U.S.C. § 45, and California common law.

209. Stanley Steemer's unlawful, unfair, and deceptive acts and practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and California Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach;

43

b. Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and California Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not properly secure Plaintiff's and California Subclass Members' Private Information;

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Consumer Privacy Act, Cal. Civ. Code § 1798.100, and California's Customer Records Act, Cal. Civ. Code § 1798.80, et seq., and § 1798.81.5, which was a direct and proximate cause of the Data Breach; and

h. Failing to provide the Notice of Data Breach required by Cal. Civ. Code §
1798.82(d)(1).

210. Stanley Steemer's representations and omissions were material because they were
likely to deceive reasonable consumers about the adequacy of Stanley Steemer's data security and
ability to protect the confidentiality of consumers' Private Information.

211. As a direct and proximate result of Stanley Steemer's unfair, unlawful, and
fraudulent acts and practices, Plaintiff and California Subclass Members were injured and suffered
monetary and non-monetary damages, as described herein, including but not limited to fraud and
identity theft; time and expenses related to monitoring their financial accounts for fraudulent
activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private
Information; overpayment for Stanley Steemer's services; loss of the value of access to their
Private Information; and the value of identity protection services made necessary by the Data
Breach.

212. Stanley Steemer acted intentionally, knowingly, and maliciously to violate
California's Unfair Competition Law, and recklessly disregarded Plaintiff's and California
Subclass Members' rights.

213. Plaintiff and California Subclass Members seek all monetary and non-monetary
relief allowed by law, including restitution of all profits stemming from Stanley Steemer's unfair,
unlawful, and fraudulent business practices or use of their Private Information; declaratory relief;
reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive
relief; and other appropriate equitable relief.

**COUNT VIII**
**Violation of the California Consumer Legal Remedies Act**
**Cal. Civ. Code §§ 1750,** *et seq.*
**(On Behalf of Plaintiff and the California Subclass)**

45

214. Plaintiff realleges and restates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

215. The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA") is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

216. Stanley Steemer is a "person" as defined by Civil Code §§ 1761(c) and 1770 and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

217. Plaintiff and the California Subclass are "consumers" as defined by Civil Code §§ 1761(d) and 1770 and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

218. Stanley Steemer's acts and practices were intended to and did result in the sales of products and services to Plaintiff and the California Subclass Members in violation of Civil Code § 1770, including by:

    a. Representing that goods or services have characteristics that they do not have;

    b. Representing that goods or services are of a particular standard, quality, or grade when they were not;

    c. Advertising goods or services with intent not to sell them as advertised; and

    d. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

219. Stanley Steemer's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Stanley Steemer's data security and ability to protect the confidentiality of consumers' Private Information.

220.    Had Stanley Steemer disclosed to Plaintiff and California Subclass Members that its data systems were not secure and, thus, were vulnerable to attack, Stanley Steemer would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Stanley Steemer was trusted with sensitive and valuable Private Information regarding millions of consumers, including Plaintiff and California Subclass Members. Stanley Steemer accepted the responsibility of protecting the data but kept the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and California Subclass Members acted reasonably in relying on Stanley Steemer's misrepresentations and omissions, the truth of which they could not have discovered.

221.    As a direct and proximate result of Stanley Steemer's violations of California Civil Code § 1770, Plaintiff and California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Stanley Steemer's products and services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

222.    Plaintiff and the California Subclass seek injunctive relief, including an order enjoining the acts and practices described above, attorneys' fees, and costs under the CLRA. Pursuant to Cal. Civ. Code § 1782(a), Plaintiff served Stanley Steemer with notice of their alleged violations of the CLRA by certified mail return receipt requested on December 5, 2023. If, within thirty days after the date of such notification, Stanley Steemer fails to provide appropriate relief for their violations of the CLRA, Plaintiff will amend this Complaint to seek damages.

## COUNT IX
## UNJUST ENRICHMENT
**(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the California Subclass)**

223.     Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

224.     This Count is pleaded in the alternative to Counts III and IV above.

225.     Plaintiff and Class Members conferred a benefit on Stanley Steemer by turning over their Private Information to Defendant and by paying for services that should have included cybersecurity protection to protect their Private Information. Plaintiff and Class Members did not receive such protection.

226.     Upon information and belief, Stanley Steemer funds its data security measures entirely from its general revenue, including from payments made to it by Plaintiff and Class Members.

227.     As such, a portion of the payments made by Plaintiff and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Stanley Steemer.

228.     Stanley Steemer has retained the benefits of its unlawful conduct, including the amounts of payment received from Plaintiff and Class Members that should have been used for adequate cybersecurity practices that it failed to provide.

229.     Stanley Steemer knew that Plaintiff and Class Members conferred a benefit upon it, which Stanley Steemer accepted. Stanley Steemer profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiff's and Class Members' Private Information and prevented the Data Breach.

230.    If Plaintiff and Class Members had known that Stanley Steemer had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

231.    Due to Stanley Steemer's conduct alleged herein, it would be unjust and inequitable under the circumstances for Stanley Steemer to be permitted to retain the benefit of its wrongful conduct.

232.    As a direct and proximate result of Stanley Steemer's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity to control how their Private Information is used; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Stanley Steemer's possession and is subject to further unauthorized disclosures so long as Stanley Steemer fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

233.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Stanley Steemer and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Stanley Steemer from its wrongful conduct. This can be accomplished

by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

234. Plaintiff and Class Members may not have an adequate remedy at law against Stanley Steemer, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT X
## DECLARATORY JUDGMENT
**(On behalf of Plaintiff and the Nationwide Class or, Alternatively, the California Subclass)**

235. Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

236. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described in this Complaint.

237. Stanley Steemer owes a duty of care to Plaintiff and Class Members, which required it to adequately secure Plaintiff's and Class Members' Private Information.

238. Stanley Steemer still possesses Private Information regarding Plaintiff and Class Members.

239. Plaintiff alleges that Stanley Steemer's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of his Private Information and the risk remains that further compromises of their Private Information will occur in the future.

240. Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Stanley Steemer owes a legal duty to secure its customers' Private Information and to timely notify customers of a data breach under the common law and Section 5 of the FTCA;

b. Stanley Steemer's existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect customers' Private Information; and

c. Stanley Steemer continues to breach this legal duty by failing to employ reasonable measures to secure customers' Private Information.

241. This Court should also issue corresponding prospective injunctive relief requiring Stanley Steemer to employ adequate security protocols consistent with legal and industry standards to protect customers' Private Information, including the following:

a. Order Stanley Steemer to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

b. Order that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, Stanley Steemer must implement and maintain reasonable security measures, including, but not limited to:

i. engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Stanley Steemer's systems on a periodic basis, and ordering Stanley Steemer to promptly correct any problems or issues detected by such third-party security auditors;

ii. engaging third-party security auditors and internal personnel to run automated security monitoring;

iii. auditing, testing, and training its security personnel regarding any new or modified procedures;

iv. segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Stanley Steemer's systems;

v. conducting regular database scanning and security checks;

vi. routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

vii. meaningfully educating its users about the threats they face with regard to the security of their Private Information, as well as the steps Stanley Steemer's customers should take to protect themselves.

242. If an injunction is not issued, Plaintiff will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at Stanley Steemer. The risk of another such breach is real, immediate, and substantial. If another breach at Stanley Steemer occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

243. The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Stanley Steemer if an injunction is issued. Plaintiff will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Stanley Steemer's compliance with an injunction requiring reasonable prospective data

security measures is relatively minimal, and Stanley Steemer has a pre-existing legal obligation to employ such measures.

244. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Stanley Steemer, thus preventing future injury to Plaintiff and other customers whose Private Information would be further compromised.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Classes described above, seeks the following relief:

a.  An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Nationwide Class and California Subclass requested herein;

b.  Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order instructing Stanley Steemer to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e.  An order requiring Stanley Steemer to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED December 8, 2023            Respectfully submitted,

/s/Christopher Wiest
Christopher Wiest (Ohio 0077931)
50 E. Rivercenter Blvd, Ste. 1280
Covington, KY 41011
Tel: (513) 257-1895
Fax: (859) 495-0803
chris@cwiestlaw.com

Mason A. Barney (PHV forthcoming)
Tyler J. Bean (PHV forthcoming)
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: tbean@sirillp.com